Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good morning, everyone. We will proceed with argument in 19-1755. And Mr. Thurer, is that how you pronounce it? Thurer, Your Honor.  Good morning, and may it please the Court. Thank you, Your Honor. I represent the plaintiffs below, appellants above, in this appeal from the entry of summary judgment by the trial court on claims under the Fair Labor Standards Act for unpaid overtime brought by seven battalion chiefs in the Chesapeake Fire Department. The issue before the Court today is one of the factual issue of the primary duty of these battalion chiefs. And the regulations are clear that the primary duty is that which is the principal, main, major, or most important duty. And the trial court below erred by entering summary judgment by finding as a matter of law, despite the standard of clear and convincing evidence required for application of an exemption, that the battalion chiefs were exempt from overtime. And the regulations at issue on this appeal are those that the Court addressed in its Morrison decision, specifically the first responder regulation at 29 CFR 541.3b. And what makes the battalion chiefs first responders, or at least what creates a genuine issue of material fact for purposes of summary judgment, is the nature of the duties and how the Chesapeake Fire Department has employed them to perform those duties. Mr. Stewart, this is Judge Agee. I have a question on that particular point as you get started. Looking at your brief in the same section, you make two arguments that appear to be contradictory. On page 29, you write that the evidence creates a genuine issue of material fact on whether the chiefs have a primary duty of first response, etc. But then a few pages later, you say the undisputed evidence establishes that emergency response is the principal and most important job of the appellants. So, at least it appears to me that you argue with both ways. That wasn't artfully put, Your Honor. I would clarify my position as saying that we certainly believe below that the evidence was such that the Court could have entered summary judgment in our favor, that the plaintiffs were first responders. But even if the Court were to disagree with that, we think it's clear that summary judgment is inappropriate because that same evidence upon which we relied would at the least require a jury to determine whether first response was indeed the primary duty of the battalion chiefs. And the reason we believe that is because these chiefs share the same training assignments and duty requirements as the core group of firefighters that are tasked with first response. They are mandatorily and automatically dispatched to a wide range of emergencies, and they must respond. They do not have the discretion to not respond when they are dispatched. The opposing counsel says that they can cancel a call in their discretion. Is that correct? Opposing counsel does say that, Your Honor, but the record of evidence is quite clear that no battalion chief has ever canceled a call. Do they have the authority to do so? Theoretically, Your Honor, I think there's a genuine issue of material fact because six of the plaintiffs said they did not. Can they make themselves out of service without the approval of a superior? Your Honor, the record of evidence showed that if they were going to be out of service for more than a couple of hours, they needed to coordinate with their supervisor, the division chief, Chief Wooten. But, in other words, they could take themselves out of service because a couple of hours is a long time when you're fighting an emergency or a fire. What's important to recognize there, Your Honor, is that there are three battalion chiefs on duty at all times. And when one battalion chief has to take himself out of service for any period of time, he coordinates that with the other battalion chiefs so that the battalion chief response is still covered. So the question of whether an individual battalion chief amongst three on duty... So the answer to my question was yes, they can take themselves out of service without the approval of a superior. Unless it's for more than a few hours, Your Honor. That's correct. Please make the point that the battalion chiefs respond to only about 10% of total emergency incidents. If that's true, it would seem like a very small percentage. I'm sorry, Your Honor. What do you make of that contention that they respond to only 10% of total emergency incidents? Your Honor, my response there is that the data shows that the battalion chiefs respond to more incidents than some latter engine and medic units, about which I don't believe there's any dispute, are manned by non-exempt employee firefighters. The function of the battalion chief is to provide the necessary level of command to manage the incident in accordance with the best practices that the Chesapeake Fire Department determined was necessary so they could deliver the emergency response services that they are expected to perform. And just as... because the battalion chief does not go with an engine if there is a trash can fire, does not in any way mean that they are not themselves first responders. Similarly, the fact that a medic does not go to a trash can fire would not in any way jeopardize the non-exempt status of the EMTs on that medic unit. But surely some significance would attach to the fact that these are not the... just judging from the car, they're not the ladder and hose people. Correct, Your Honor. I mean, while the battalion chief's vehicle is designed for a particular purpose, just as a ladder, an engine, or a medic unit are each designed for particular purposes. But as the record evidence shows, the command vehicle is an emergency apparatus. It has emergency gear. It is dispatched automatically to those calls because those certain calls require that level of response. I've seen a lot of fire departments and the chief or the managerial sector do appear to drive distinctly different vehicles from the regular firefighters. And in this case, you would look at an SUV and everything, you would say, oh, that is the chief's car. In other words, these facts, at some point, seem to begin to pile up. And I can take your effort to explain away one or two of them. But at some point, the accumulation of facts becomes significant. One thing I wanted to ask you, you make a good bit out of the fact that the battalion chiefs were well-versed in firefighting techniques and the like. And I'm wondering, I think all people in a position of management would so often come through the ranks and you would want and expect them to have a good bit of experience and knowledge of the duties of those whom they are directing. For example, if you have a senior vice president at a bank and they may supervise a number of loan officers, you would prefer that they have been loan officers at some point themselves. And I hardly see how you can be an effective supervisor without detailed knowledge of the duties and the daily routines of those whom you are supervising. And that's the way organizations work, is you arrive at these managerial positions by climbing up through the ranks. And that's a good thing. And so that was just one thing that hit me. The fact that they are knowledgeable about what the first responders do doesn't mean that they're not managers, does it? Well, Your Honor, I think the crucial distinction there is that it's not a question of them having the experience. What the record shows is that their boss, Division Chief Wooten, said they use those knowledge, skills, and abilities and those tasks every day. It's not a question of knowing what their subordinates are doing. It's a question of having those KSAs and those task skills to perform every day. And that's the distinction between the president of a bank who simply knows what the loan officer does or how the loan officer does his job, and a battalion chief who has to be able to do those things, those same things that that firefighter does on that engine or on that ladder. And that's a crucial distinction that I think shows that these battalion chiefs are first responders. They are not high-level operators. This is the core group of firefighters versus the high-level operations. And the rest of the record, I think, supports that as well. Now, to your point that certain things add up, that certain facts or certain factors add up, that simply shows that here what the trial court did is it entered into impermissible line drawing in resolving issues of fact, and that is not its job. The jury decides what the primary duty is if the facts are in dispute. And what the trial court here did is it decided to do that itself. And for that reason alone, the decision of the trial court should be reversed and the case remanded. But I'm just a little bit puzzled as to what is in dispute because, again, it seems that they respond to a fairly low percentage of emergency incidents. And when they do respond, again, they're not the ones operating the ladder or the hose. In fact, when they do respond, they are directing the operations at the scene. And the decision to call for additional personnel or equipment, that's often the job of a manager. One thing that sort of interests me, my time in the Army was limited to a tour in the Army reserves. But one of the police departments and fire departments, they had adopted something of a paramilitary form of organization. And from my very limited experience, the head of a battalion who was a lieutenant colonel or a major was very different from a captain who was a company commander. And when there was a call to order, they would say battalion and then company, and it would be on down the line. So the fact that someone is called a battalion chief, to me, the title is not everything. It's not dispositive, but battalion chief does indicate a certain level of responsibility and a rather elevated place in the hierarchy. It's a nice title, which is assigned to very few people. It must mean something. Well, Your Honor, I'm going to run out of time, but if I could just answer that question, I would appreciate the opportunity. A couple things that make it the battalion chief, not high-level operators. They're achieving tactical objections at the scene of the emergency. They're wearing their personal protective equipment to do so, and they're often operating in the hazard zone. And that's what differentiates them from high-level operations. And I spent 10 years in the Marine Corps, so I'm familiar with the battalion structure. And unlike a Marine battalion, the captains here are captains of a four-man crew on an engine. Lieutenants are often the same or in charge of a two-man medic. And the battalion chief is often operating two or three engines in a ladder. So that battalion chief is operating at an emergency scene with perhaps 16 individuals as opposed to 700 Marines. And while the term battalion chief—may I conclude my argument, Your Honor? You certainly may. Thank you. So while the term battalion chief is similar to battalion commander, the actual role of a battalion chief is very different from a battalion commander who is— How many captains does a battalion chief supervise? It depends, Your Honor. It could be one, two, maybe as many as three. It depends on the shift, and it depends on how many lieutenants are also on that shift. Does it make a difference that the battalion commander is the head of the—is the senior officer? They serve—a lot of people serve 24-hour shifts. But the appellees make the point that for two-thirds of that time, the battalion chief was the officer in command. Not everybody who serves a 24-hour shift is actually the senior officer in command for large portions of that shift as the battalion chiefs appear to be. They're the number one person for two-thirds of that 24-hour time. That's correct, Your Honor. But it's important, I think, to remember that the record shows they do not handle community compliance. They do not implement training programs. They do not control expenditures. They do not prepare budgets. They do not set staffing levels, hours, or rates of pay. Do not— What they do is they give hiring and firing recommendations and approve leave requests and training assignments. And you've got this testimony from the division chief, Mr. Wooten, who said that when somebody came up for designation as an acting battalion chief and when recommendations came for firefighter placements and recommendations as to who would be placed in the battalion, that they weighed in on a variety of important personnel decisions. Again, I don't see that as dispositive of the first responder question, but I do see it as relevant. And at a certain point, relevant factors do become dispositive, not immediately, but in combination. That's all I'm saying. And I appreciate your patience with me and your arguments, and you've also got some time for rebuttal. Thank you, Your Honor. Good morning, Your Honors. This is Randy Sparks on behalf of the FOA, the city of Chesapeake. From our standpoint, the district court absolutely got this right in entering summary judgments for the city. In fact, I think that, Your Honor, as you were just talking about, aren't these elevated officials within the fire department, I think that even the appellants themselves agree that they are elevated and that their duties are there for the purposes of command and supervision. For example, appellant Fancher testified, and this is in the record, that the primary role of a field battalion chief is to lead and manage his or her battalion of five stations. This includes running emergency responses, training, staffing, and time cards. That is a direct quote from appellant Fancher's testimony here. Similarly, apparent active testified in this matter. All right, tell me, because we want to be faithful to our precedent here, what is the difference between these individuals and those in Morrison? The difference, Your Honor, and I think that you were right to go there because I think that this case is absolutely just an extension. It's the next logical step out of the Morrison case. The difference between these battalion chiefs and the captains in Morrison is the hands-on firefighting component of it. If you look at the Morrison decision, the thing that really differentiated the captains there was, and this is coming out of Morrison, that at the scene, these commanders worked side-by-side with their subordinates, wearing the same protected gear. With their crews, they operate hoses and ladders, ventilate buildings, and force entry, running into burning buildings to rescue victims or search for signs that a fire will spread. That, Your Honor, I think is the difference. That is not what battalion chiefs are doing. Battalion chiefs are on the scene to provide, and the record is replete that I don't think that there is any battalion chief, any appellant here that disagrees that when they are on the scene, they are in charge. What the regulation and what Morrison says is that if they are performing management duties side-by-side while doing that hands-on firefighting, that's what makes the difference. These appellants are not doing any hands-on firefighting. They have testified that hadn't. I'm sorry? Counsel? Hi, this is Diana Moss. Can I ask you, then, your position would be different, and you would agree with your colleague on the other side that if they were fighting side-by-side, as well as the other duties they had, the result here would not be the one you want. Is that correct? I would agree that what Morrison and what all the other cases that have looked at this issue come down to is whether they are engaging in that hands-on firefighting, that that is what the first responder regulation goes to. So I think we would have to agree that if their duty was to grab a hose, run into a building, rescue victims, that that would bring them within there. But I think the facts of this case are absolutely that that is not what they were doing. So the shorter answer to my question was yes. Is that correct? The shorter answer is yes, Your Honor. Thank you. Jumping back in, again, I think that all of the record evidence here, and I believe that Mr. Doerr in his opening comments actually addressed this as well, that the battalion chiefs here are present within the fire department to be able to provide the services of the fire department. Now, Mr. Doerr and the appellants are arguing or have argued that whether the primary duty is first response or not is a question of fact that the district court jumped in on and shouldn't have. What I would tell you, and this seems to be a reliance on a single passage from Morrison that was repeated a number of times, that on the record here, no reasonable jury could find that, in that case, that Fairfax had shown by clear and convincing evidence that the captains were, that their duty was managed, or their primary duty was management or management related. Is there a disputed issue of fact as to what the battalion chiefs actually do on the scene? Yes, sir. The question of whether, and Morrison says this and the court's president says this, that the question of whether an exemption applies is a mixed question of fact and law. The questions of fact are what do the employees actually do, whereas the question of law becomes what, how does the exemption apply or does the exemption apply? So once it is determined or undisputed, as it is in this case, of what the plaintiffs actually do, it then is an issue for the court to decide whether the exemption applies. And if you look at Morrison itself, that's exactly what this court did. At the end of the day, this court said in the Morrison decision, it said the facts of what they do, there's a dispute over what is the characterization of the work that they do, but the activities and responsibilities were undisputed. And the court actually granted summary judgment for the captives in that case, finding that no reasonable jury could conclude that they were doing management or management related activities. So. I understand. Just tell me this. What, what, what is undisputed about. What they do actually at the scene of a fire. What is undisputed at a scene of a fire? What is undisputed is that they take command. And that they don't do any hands-on firefighting. It's undisputed. I think that the most testimony that came out of here in the record is that they may have unkinked a hose a time or two. And one appellate manager did say at one point, he did go into a building, but that's it. One instance of going in a building and maybe unkinking a hose. The undisputed part of what they're doing at a scene is, is that having seen they are arriving, they are setting a command center. And from that command center, they are directing the activities of every other firefighter on the scene. They are telling one company to go here, one company to do this. They are the ones that are orchestrating the movement. They are not the ones doing the firefighting themselves. They're responsible for accounting for everybody that's on the scene, making sure it's being done safely. And honestly, if you get more than one battalion chief that shows up on the same scene, the first one upon arrival is undisputed is going to be the incident commander. The second one is they going to take a different command role. They may be the safety officer. They may be a division officer, but every battalion chief that shows up there, it's not that they're jumping in and joining a unit. They're not manning a hose. They're not climbing. They're not doing ladders. They're not entering the building. They are commanding some aspect of that scene. And that is absolutely undisputed on this record here. They are there to command. I think what is also undisputed about when they come on a scene is, is that they have the discretion of whether they even stay there or not. If they show up on a scene and there is a captain or another command, a company officer there that has taken charge before they've got there, they have the discretion to leave it within the hands of that company officer. They have the discretion to take it away from the company officer and take command. They can actually decide that they are going to leave the scene completely and not be there because it's under control. Or they can decide to leave it in the hands of someone to continue to run that incident while they sit there and evaluate that company officer. They have, it is undisputed, the amount of discretion that they have when they show up. But the long and the short of it is that at the scene, they are in command. Your opposing counsel said, yeah, they can take themselves out of service without, and they can absent themselves from the scene of a fire without the approval of a superior. But I asked about that, the fact that the battalion chiefs can, at their discretion, take themselves out of the firefighting scene altogether. They can just leave. And he said, yes, but they can only do that for a couple of hours. Well, if you've got a, you know, if you've got an emergency and a fire and someone's leaving for a couple of hours, while other people are still on the scene fighting the fire, isn't that, is that significant? That was one of the things that I've, that concerned me is how someone would be a front level firefighter. If they can just leave for two or three hours. I mean, no front level firefighter can do that. Not without the approval of a superior. Is that an undisputed fact? Yes, sir. It is. It is undisputed. And let me say, because we have two different scenarios there. The first scenario that you talk about, about taking yourself out of service. Doesn't even really go to when they are on a scene we're talking about. Mr. They will argue that they are on the run prescription or they're on the list in order to respond to 40 out of the 70 types of calls that the fire department handles. So the vast majority of the calls that get handled by the fire department, battalion chiefs are not even dispatched to. In fact, as your honor pointed out, it's undisputed that they go to about 10% of all the incidents handled by the fire department. So 90% of all calls and incidents handled by the fire department of Italian chiefs, not even going, but a battalion chief has the discretion to even take themselves off of that run prescription, meaning that they don't even get dispatched and they can do that at their own discretion, just with making sure that there's another battalion chief to cover. And if it's a more than a few hours, all they have to do is the testimony was, was notify their, the deputy or division chief that they were taking themselves out of service for more than a few hours. Now they're flipping over. Once you actually get, if they do dispatch and they do respond to a scene, there's another level of discretion that is undisputed in here where the battalion chiefs that are just able to leave the scene completely, whether it's for two hours, three hours, they never have to go back to that scene. If they choose that it is under control and they don't need to be there. I think your honor is absolutely right. That is significant, completely significant. Discretion to respond. Not only can they take themselves off of the run prescription for a period of time. Once they go to that call, they can take themselves and they can remove themselves completely from a call without any authority, without any approval from anyone, just their own approval. The question of whether they're exempt. The second argument, the executive exemption applicable more so because of their involvement in managerial tasks, chiefly personnel recommendations. But you know, a lot of times council really overextends. And I don't understand the executive exemption seemed to me, and I realize you can, you can argue in the alternative, but the argument that there is an administrative exemption or an exemption for highly compensated employees or whatever that just, you know, that just seemed to me a real stretch. And it seems to me if we realize, if we recognize your argument on the administrative or highly compensated employees exemption, we'd be tearing a hole in the fair labor standards act. So you've got a good argument under the executive exemption. And I don't understand why you threw in these other things, which just the district court didn't buy it. But it seemed a real stretch to me. And, um, so this is a, it's a very important piece of legislation, which, which, um, you know, requires courts to sometimes, uh, a balanced, um, things and get close cases, but those other kinds of, other kinds of things. And I, you know, I just, as I say, I don't, I don't mean to, um, diminish the ability of council to argue in the alternative, but the alternative arguments need to make a certain amount of sense. And you've got a strong argument in the executive exemption. I don't understand why you throw in that other stuff. Well, your honor, I think it's the, uh, that the short answer to your question is that it absolutely is alternative argument that, uh, particularly as your honorable knows with FLSA, you could have people that are subject to multiple exemptions. You could actually have, I believe that you could have, uh, with respect to the white collar exemptions, if you have the right person performing the right duties, then the regulations could say that you could have somebody that's exempt as an executive administrative professional and highly compensated all at the same time. Um, now I will say the district court did find that for five out of the seven battalion chiefs, that they were subject to the highly compensated employee because of the fact that they did perform an executive duty. I would agree wholeheartedly with your honor that the executive exemption absolutely applies here that we've got folks that meet all of the criteria for, you know, the salary threshold, uh, that they are managing, that they're performing management duties, that they are overseeing more than full time. Your honor asked, I think the question earlier, and I think that this is a maybe an opportune time to throw it out. What's interesting about the executive exemption is that the, um, the claim of a categorical categorically covered under the, um, first responders as first responders, that claim interlocks with the executive, um, exemption. Um, in other words, I see them as interlocking because I think part of, part of the reason the executive exemption does or does not apply depends upon, um, the kind of, uh, some of the, some of, not all, they're different questions, but some of the same arguments that you make on the, um, on the, um, whether they're on the primary duty, um, business and on the, uh, your line is now muted. And also on the primary duty point, um, you, you probably the best, that's the money you could possibly get. Um, was that from a division chief? Yes. Really seem to make uncontradicted statements on that. Decisions were, um, involved such as disciplinary recommendations, um, uh, promotions, um, placement trainings and everything that the, um, the vision tree placed a considerable confidence in the recommendations of the BCs. Um, that seemed to me to be relevant to both claims. Uh, yes, sir. Your honor. I think that you are absolutely right. I do think that there is a certain amount. In fact, I think that's what the regulation was intended was that the first responder regulation was supposed to work with, uh, the white collar exemptions, for example, the executive because really what that first responder regulation says is that if the primary duty is first response, I eat kind of that frontline hands-on firefighting that that would take somebody out of the executive. But what if, if a fire official is really doing management, it still can be executive. And I agree with your honor, he's the Italian chief and by their own admission, recognize that they were the commanders of their battalion. And you are absolutely right that, uh, I will tell you, um, as a battalion chief, there is a lot of trust and a lot of responsibility that is put on these folks. And I think that they recognize that they didn't get there because they weren't trustworthy and all, and that they weren't good firefighters. Nobody will ever take that away from them, that they're good firefighters. They are important. They are extremely important to the fire department, but really what they're doing and why they're so important is that management aspect. And you are absolutely right. The idea that a battalion chief can appoint acting, uh, company officers, the fact that they can, um, that they can clear, uh, captains that want to move up in order to rank up to a battalion chief, you have to go through the acting battalion chief. They're doing the training, they're releasing them in order to do it. And you're absolutely right. And it's undisputed that he's placed that trust in them. I think that the undisputed fact here show these battalion chiefs are managers first, firefighters second. And that's what the regulation says brings them within the executive exemption. Did you have anything further? I believe your honor that my time is up. Unless the panel has any further questions for me. All right. Let me ask my co-panelists. If I judge much, do you have any further questions? No, thank you. Do you have any further questions? No, thanks. All right. Thank you very much. And, and, um, uh, we'd like to hear the rebuttal argument at this point. Thank you, your honor. I'd like to point out that the issue of whether the battalion chiefs recommendations are given particular weight is disputed in this case. If you look on page four 65 and six Oh one of the record, both chief Emmons and chief Smith testified that their recommendations on discipline were rejected by chief Luton. The interesting point there is that the, um, the regulations don't require that every ultimate decision to hire or promote, uh, be accepted. Um, then the same argument was made before the sixth circuit in the, um, in the whole case. And the sixth circuit, as I understand it and hold, um, no, it doesn't. The point is that they're making the recommendations and that on some recommendations were listened to. Um, and many occasions they were accepted and some they may not have been, but the regulations are very clear that the recommendations don't have to be accepted a hundred percent of the time. And you've got this sixth circuit case out there, um, which holds exactly that had a distinguished hold. Well, that was after a bench trial, your honor. So the trial court there was certainly allowed to weigh the evidence and determine whether those recommendations have been given particular way. That's not something that the trial court here could properly do, but yet that is what it did do. So the procedural posture of hold actually proves my point. Oh, I, all I was, all I was saying is that the, um, it was reading from the regulations, which do not rip. The question was whether there was a hundred percent acceptance. Um, then that would be a disputed issue of fact, or maybe it would be undisputed in your favor. But really the, the, the, um, your burden is to, is to prove that these were that they were not making regulation, that they were not making recommendations, that they were not significant and that oftentimes, uh, that even if, even if they were rejected, sometimes the fact that they were accepted other times and listened to at all times, that doesn't, that doesn't carry your burden of proving an issue of tribal or tribal fact under these regulations is they're clearly worded. Your honor, I disagree because the burden of proving the exemption is on the defendant here by clear and convincing evidence. I, I need prove nothing, but what I have shown through the record is that there is a genuine issue of material fact, whether the recommendations of the Italian chiefs were given particular weight. And that is not only on, uh, terminations or discipline, but it also is on transfers. It's on rehires. It's on selecting acting chief candidates. All of these were in the record as issues of genuine material fact. Well, in your view, but you know, on the cell attacks, you have the burden of showing that there is an issue of, of tribal fact here. And as I say, the most material testimony is that of the division chief and his is quite detailed along a variety of decisions. Um, let's say disciplinary training decisions, promotion decisions, um, uh, acting BC placement, not just one area, but across the board and that is the division chief would be the single most relevant person to bring forward. And I asked the question, look, how much do these people, uh, how much do their recommendations matter? And there was nothing conclusory about what he said. It was, it was quite quite detailed. Your honor, but it was contradicted by the battalion chiefs, uh, pages one, one nine, two, four 65, six Oh one, one 10, 1254 to 55, 1185 to 87, 1171, 85 to 86 in the joint appendix. And I would like to address also the issue of actions at the fire scene. The tactical operations that the battalion chiefs engage in at the fire scene is not the high level of operations that is contemplated by the regulations under five 41.3 B. I'd also point out that captains are also incident commanders on certain calls. And as an incident commander, there are certain rights and duties, including releasing units that are at the scene. So the issue is not whether battalion commanders serve as instant commanders. The whole point is that incident commanders are part of the hands-on firefighting at the scene. You do not have a response to a scene without an incident commander. It's, it's part and parcel of the organism that combats that emergency. And the fact that the battalion chiefs serve as incident commanders, uh, does not mean they are engaged in a high level of operations that is contemplated by the regulations. I don't, I think I heard a ding. Yeah. Uh, I think my time is expired. Uh, if there are no further questions, uh, I asked the court to reverse and remand the decision of the trial court. All right. We, um, we thank you very much. And, um, I think that concludes our argument. If my co-panelists have, um, or further questions, um, I would like to thank both counsel. Um, it's a lively case and I really appreciate, uh, the argument here on both sides. And, um, we will, um, we'll adjourn court and, and then we'll come back, uh, uh, after our brief, after our brief recess and we will conference this case. All right. This honorable court adjourns until this afternoon. God save the United States and this honorable court.
judges: J. Harvie Wilkinson III, Diana Gribbon Motz, G. Steven Agee